771 F.2d 1362
 UNITED STATES of America, Plaintiff/Appellee,
v.
Robert Wayne BARKER, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
William Bernard McKINNEY, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jeffrey Martin ENGLE, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
George Leland TIMMONS, III, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jason ENGLE, Defendant/Appellant.
 Nos. 84-1240 to 84-1242, 84-1244 and 84-1280.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1985.
Decided Sept. 20, 1985.
 
 Joseph P. Russoniello, U.S. Atty., Sanford Svetcov, Asst. U.S. Atty., Rodolfo Orjales, San Francisco, Cal., for plaintiff/appellee.
 Michael Pancer, San Diego, Cal., and Victor Sherman, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for defendants/appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, CANBY and NORRIS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Each appellant pleaded guilty to one count arising from participation in a single shipment of marijuana that was part of a large and protracted marijuana smuggling operation. Each was sentenced to the maximum term permitted by statute. On appeal, each contends that the district court abused its ordinarily wide discretion in sentencing by failing adequately to consider individualized factors. We agree, vacate appellants' sentences, and remand for individualized resentencing in accord with this opinion.
 
 BACKGROUND
 
 2
 From 1977 to 1981, a large-scale drug smuggling organization known as the "Coronado Company" imported and distributed approximately twenty-four tons of marijuana from Thailand. More than twenty-five persons participated. The five appellants here, Robert Barker, William McKinley, Jeffrey Engle, Jason Engle, and George Timmons, were each charged with multiple substantive and conspiracy counts stemming from their involvement in the Company's importation of five tons of marijuana in 1981.
 
 
 3
 Count One charged each with conspiring to import five tons of marijuana in violation of 21 U.S.C. Sec. 963. Count Two charged defendants with conspiracy to possess and distribute. Counts Three and Four charged that Jeffrey and Jason Engle had actually imported the marijuana in violation of 21 U.S.C. Sec. 952, and had possessed it with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(6).
 
 
 4
 Separate superceding informations were filed against Barker, McKinney, and Timmons. Barker and McKinney were charged with unlawful possession, respectively, of 140 and 45 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). Timmons was charged with conspiracy to possess 180 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and 846.
 
 
 5
 Each defendant ultimately pleaded guilty to a single count, and remaining counts were dismissed upon government motion. Barker, McKinney, and Timmons each entered guilty pleas to the superceding informations. Jeffrey and Jason Engle each pleaded guilty to Count One of the indictment.
 
 
 6
 Each defendant's involvement in the smuggling operation was described by his respective counsel at the sentencing hearing. Jeffrey and Jason Engle were crew members on a boat that delivered the marijuana from Thailand. Timmons invested $100,000 in the operation and was repaid with 180 pounds of marijuana. Barker invested $50,000 and received 45 pounds of marijuana in return. McKinney "lent" $75,000 to the principals of the smuggling ring, and was also repaid with 45 pounds. Although the entire conspiracy extended for over five years, the record does not reflect any other involvement in the smuggling operation by any of these defendants.
 
 
 7
 By the time appellants entered their guilty pleas, most of the other members of the "Coronado Company" had been sentenced in separate proceedings. After comparing relative levels of culpability and considering the sentences imposed in other districts on more prominent members of the Company,[1] the government recommended prison sentences for each defendant ranging from one year for crew members Jeffrey and Jason Engle, to 18 months for the "investors" Barker, McKinney, and Timmons. The court, however, rejected these recommendations. Describing marijuana smuggling as "a plague on society," and expressing its dismay at what it viewed as the government's leniency, the court sentenced each defendant to the maximum five-year term permitted by statute.[2] This appeal follows.
 
 DISCUSSION
 A. Reviewability
 
 8
 It is generally accepted that trial courts are accorded virtually unfettered discretion in imposing sentence. See Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); but see 3 C. Wright, Federal Practice and Procedure Sec. 533 at 168-69 (1982) (rule arguably based on misconstruction of 1891 statute creating courts of appeals); Woosley v. United States, 478 F.2d 139, 141-42 (8th Cir.1973) (en banc) (discussing 1891 statute and noting that Supreme Court support for this proposition "is pure dicta" ). While there are exceptions, see United States v. Garrett, 680 F.2d 650, 652 & n. 3 (9th Cir.1982), a sentence is generally not subject to appellate review if it is within statutory limits. See United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); United States v. Lopez-Gonzales, 688 F.2d 1275, 1276 (9th Cir.1982).[3]
 
 
 9
 The exceptions to this rule, while limited, are well supported. Courts have remanded for resentencing "where the sentencing court in effect refuses to exercise its discretion," United States v. Wardlaw, 576 F.2d 932, 938 (1st Cir.1978), and where the district court "exceeded the bounds of its sentencing discretion" by failing to individualize sentences. Id. In Lopez-Gonzales, we held that because trial courts are obligated actually to exercise their discretion, we may conduct a limited review of the sentencing process to insure that discretion has, in fact, been exercised by the district court. 688 F.2d at 1276 (citing Dorszynski, 418 U.S. at 443, 94 S.Ct. at 3052). In Garrett, we noted that sentences imposed on a mechanical basis have been vacated as an abuse of the sentencing judge's discretion. 680 F.2d at 652 n. 3 (citing Woosley, 478 F.2d at 141-43); see also United States v. Hartford, 489 F.2d 652, 655 (5th Cir.1974) (rigid policy of imposing maximum sentence for narcotics violations both "an abuse of judicial discretion" and "under no reasonable conception an exercise of judicial discretion").
 
 
 10
 Whether the failure to individualize sentences is described as an abuse or an abdication of discretion, however, it is the failure itself which warrants defendants' resentencing. It is that failure to which we turn.
 
 B. Individualized Sentencing
 
 11
 Few legal principles are either as ancient[4] or deeply etched[5] in the public mind as the notion that punishment should fit the crime. This familiar maxim, however, is only half-true. "[I]n the present century the pendulum has been swinging away from ... the philosophy that the punishment should fit the crime and toward one that the punishment should [also] fit the criminal." W. LaFave & A. Scott, Handbook on Criminal Law Sec. 5 at 25 (1972).
 
 
 12
 While we do not suggest that this trend has been without reverses, past or present, the concept of individualized sentencing is firmly entrenched in our present jurisprudence. As the Supreme Court has observed,
 
 
 13
 [p]unishment should fit the offender and not merely the crime. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender.
 
 
 14
 Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) (citation omitted); United States v. Foss, 501 F.2d 522, 527 (1st Cir.1974); Wardlaw, 576 F.2d at 938. In each case, a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime. As we said in Lopez-Gonzales, 688 F.2d at 1276-77,
 
 
 15
 [t]he exercise of sound discretion requires consideration of all the circumstances of the crime.... The sentencing judge is required to consider all mitigating and aggravating circumstances involved. There is a strong public interest in the imposition of a sentence based upon an accurate evaluation of the particular offender and designed to aid in his personal rehabilitation. Thus, appellate courts have vacated sentences reflecting a preconceived policy always to impose the maximum penalty for a certain crime.
 
 
 16
 Accord Foss, 501 F.2d at 527; United States v. Thompson, 483 F.2d 527, 529 (3d Cir.1973).
 
 
 17
 In Lopez-Gonzales, the district court had stated that it automatically imposed the maximum sentence whenever an illegal alien is apprehended after flight and pursuit. 688 F.2d at 1275; see Thompson, 483 F.2d at 529. Although the court here did not announce a fixed or predetermined policy to sentence drug offenders to the maximum statutory term, a full reading of the record does reveal that the court sentenced defendants as essentially undifferentiated units, ignoring both their differences from one another, and from others who might be charged under the same statute. This failure adequately to individualize sentences ignores the goal that punishment fit the criminal.
 
 
 18
 This is not to suggest that any, or even all, of the defendants here could not legitimately have been sentenced to the maximum statutory term. Our concern is less the appropriateness of a given criminal sentence than the propriety of the process through which sentence was imposed. Specifically, do the four corners of the record indicate that the district court actually and adequately considered the factors necessary to insure that each individual defendant was assessed and sentenced as an individual?
 
 
 19
 While the duty of the sentencing courts to individualize is clear, it may well be impossible to propound for purposes of review a single test or standard sufficient to insure individualized sentencing. Cf. Solem, 103 S.Ct. at 3010 n. 17 (no single criterion can identify when a sentence is constitutionally disproportionate). The danger in specifying sentencing standards is the potential for any such test to become as mechanistic in application as the mechanized sentencing which we seek to avoid. To require the exercise of sound discretion is not to fall into that trap, however. See Lopez-Gonzales, 688 F.2d at 1277 (requiring exercise of discretion need not lead to "hollow ritual"). Whether sound discretion has been exercised must be answered in each case through a thorough review of the record. Here, we cannot answer in the affirmative.
 
 
 20
 To begin with, the record is replete with comments suggesting that it was the category of crime, rather than the culpability of each individual criminal, that led the court to impose the maximum statutory term. Typical, for example, was the court's statement upon sentencing Jason Engle. Although Engle had demonstrated remorse and rehabilitation, the court observed
 
 
 21
 Well, if I could ever chastise the government [for its sentencing recommendation] it would be in this case here. I never saw anything so ridiculous ... with a crime of this magnitude. I have been a judge for 17 years and I never saw a crime with such an amount of marijuana in my life and with such a lenient sentence for this massive of a conspiracy is incomprehensible, how a person could be involved in such a plague on society that involves so much marijuana, and the defendant has contributed to the spread of that plague.
 
 
 22
 At the sentencing hearing, counsel stressed (and the presentence report confirmed) that Jason's brother Jeffrey did not realize the boat was involved in smuggling marijuana until after they were at sea. He had apparently boarded the boat because his older brother had indicated they would be going fishing. Although he did eventually help load and unload the marijuana, when he learned of the indictment he immediately turned himself in and was consistently contrite. Nevertheless, the court observed, after the government's recommendation of one year in prison,
 
 
 23
 Well, there again, if I could chastise the government more fully, I would certainly do so. This is a terrible crime, tons and tons of marijuana coming into the country and people being sorry and your life and what-have-you. What about the lives of the other people that have been affected by the young people taking the stuff; just because you want to have a good time and make some money out of it.
 
 
 24
 The court made similar statements in sentencing the three defendants who contributed money to the scheme, first criticizing the government's recommendations and then commenting on the severity of the crime. There is no indication that the court seriously considered arguments made in mitigation.[6] Instead, the record suggests that in imposing sentence, the court was overwhelmingly motivated by its assessment of the crime rather than its individual evaluation of each defendant.
 
 
 25
 In addition, several factors support the inference that, in this case, the district court's imposition of sentence was more "mechanistic," Foss, 501 F.2d at 522, than measured. First, the court chastised the government for its recommendations and imposed sentences more than three times as long. Although this fact alone would not justify appellate intervention, Wardlaw, 576 F.2d at 938, it does reinforce the impression created by the court's comments before sentencing, that usual individual considerations played little if any part in its thinking.
 
 
 26
 Second, the district court imposed the same maximum statutory prison term upon each defendant, despite the differences in their levels of involvement. Although imposition of a maximum term does not alone justify appellate intervention, the district court's failure to differentiate among defendants ignores that defendants "were entitled to have their sentences set primarily in terms of the seriousness of their own crimes and associated individual factors." Wardlaw, 576 F.2d at 939. Cf. Solem, 103 S.Ct. at 3011 (relative culpability relevant in assessing sentence challenged under eighth amendment).
 
 
 27
 Similarly, although the district court correctly noted that it is not required to harmonize its view of appropriate sentencing with that of other district courts,[7] the court's statements at sentencing suggest that it was motivated by the desire to deter this "profitable business ... involving millions and millions of dollars" to the exclusion of determining what these particular defendants deserved. See note 9 infra; Wardlaw, 576 F.2d at 936.
 
 
 28
 Finally, we point out that 21 U.S.C. Sec. 841(b)(1)(B), which provides for a maximum sentence of five years for a marijuana offense involving less than one thousand pounds, " 'is an express legislative sanction ... of meting out sentences substantially less than five years in prison ... where there are appropriate mitigating circumstances.' " Hartford, 489 F.2d at 655 (citing United States v. Daniels, 446 F.2d 967, 971-72 (6th Cir.1971)). Although the establishment of a maximum sentence for offenses involving up to one thousand pounds does not require that defendants involved in smuggling lesser amounts receive sentences proportionally reduced, "from this express legislative authorization there is clearly evidenced an 'implied legislative will to impose a lesser sentence where appropriate.' " Id. at 655. By routinely entering the maximum sentence without differentiating among defendants, the district court "failed to abide by the implied congressional mandate to frame the punishment to address the particular circumstances of the individual defendant." Id.
 
 
 29
 We emphasize that neither the court's comments nor these additional factors, taken alone, would necessarily justify appellate intervention. Taken together, however, they leave us with the clear impression that the sentences imposed by the district court reflect more its personal view of the opprobrium of the crime charged--its view that "this is a terrible crime, tons and tons of marijuana coming into the country.... a plague on society...." --than a careful weighing of mitigating factors and the relative levels of culpability and involvement of each defendant.[8]
 
 C. General Deterrence
 
 30
 In sentencing appellants to the maximum statutory term, the district court repeatedly alluded to the enormous societal harm it attributed to marijuana smuggling. As the government notes, implicit in the court's comments was the desire to stem the tide of marijuana smuggling through the deterrent effect maximum sentences would presumably have on others.[9] In this sense, both the court's comments at sentencing and the sentences themselves were aimed at a wider audience than simply these defendants.
 
 
 31
 We do not find this desire to "send a message" through sentencing inappropriate per se. Indeed, perhaps paramount among the purposes of punishment is the desire to deter similar misconduct by others.[10] This doctrine, commonly called "general deterrence,"[11] boasts an impressive lineage,[12] was long-recognized at common law,[13] and continues to command "near unanimity ... among state and federal jurists...." United States v. Bergman, 416 F.Supp. 496, 499 (S.D.N.Y.1976) (Frankel, J.); see also United States v. Moore, 599 F.2d 310, 315 (9th Cir.1979), cert. denied, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); United States v. Elliott, 674 F.2d 754, 756 (8th Cir.1982); United States v. Hedman, 630 F.2d 1184, 1201 (7th Cir.1980), cert. denied, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); Foss, 501 F.2d at 528; (general deterrence appropriate objective in imposing sentence). Notwithstanding our admonishment that punishment fit the offender, we too recognize the legitimacy of considering general deterrence in passing sentence.[14]
 
 
 32
 Nevertheless, deterrence as a sentencing rationale is subject to limitation. Tailoring punishment to the individual criminal may reduce the efficacy of deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment.[15] General deterrence is a legitimate aim, but it has never been the sole aim in imposing sentence.
 
 
 33
 Central to our system of values and implicit in the requirement of individualized sentencing is the categorical imperative that no person may be used merely as an instrument of social policy, that human beings are to be treated not simply as means to a social end like deterrence, but alsoand always--as ends in themselves. See, e.g., I. Kant, Groundwork of the Metaphysic of Morals 66-67 (H.J. Paton trans. 2d ed. 1964) ("Act in such a way that you always treat humanity, whether in your own person or in the person of any other, never simply as a means, but always at the same time as an end"[16] ); see also I. Kant, Philosophy of Law 196 (W. Hastie trans.1887) ("one man ought never to be dealt with merely as a means subservient to the purposes of another"); accord United States v. Barker, 514 F.2d 208, 231 (D.C.Cir.1975) (en banc) (Bazelon, J., concurring); L. Tribe, American Constitutional Law, 463 (1978); R. Dworkin, Taking Rights Seriously 198 (1977). Deterrence is not inconsistent with this principle,[17] but the principle does demand that a balance be struck between the goal of general deterrence and the enlightened imperative of individualized sentencing. Cf. Golding, note 10, supra, at 79 (distinguishing between deterrence as a legitimate purpose of punishment and the "moral fit" nevertheless necessary between a given offense/offender and the amount of punishment).
 
 
 34
 How that balance is to be struck is committed to the sound discretion of the trial court; that it be struck is what we require today. See Lopez-Gonzales, 688 F.2d at 1277.[18] A court's "conclusions as to deterrence," however, "may never be so unbending as to forbid relaxation in an appropriate case...." Foss, 501 F.2d at 528; accord Wardlaw, 576 F.2d at 938-39.[19]
 
 
 35
 Because we find, after a careful review of the record, that the district court's imposition of sentence was motivated by the desire for general deterrence to the exclusion of adequate consideration of individual factors, we vacate and remand for resentencing.[20]
 
 
 36
 Sentences VACATED and REMANDED for resentencing.
 
 
 
 [1]
 Louis Villar, the Company's kingpin, had received a 14-month prison term. See note 7 infra
 
 
 [2]
 Section 21 U.S.C. Sec. 841(b)(1)(B) provides for a maximum prison sentence of five years for a marijuana offense involving less than 1,000 pounds. The court also imposed five year special parole terms on Timmons, Barker and McKinney, fined McKinney and Timmons $5,000 each, and fined Barker the maximum $15,000. Our disposition makes it unnecessary to reach the propriety of the special parole term given Timmons. We note, however, that a special parole term is inappropriate where defendant is convicted under the conspiracy statute. See Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)
 
 
 [3]
 Wide criticism of this rule has led to congressional action. "That appellate courts should have the power to review sentences is a proposition strongly urged by the American Bar Association, and has been endorsed by the President's Crime Commission, the National Advisory Commission, and numerous commentators." A.W. Campbell, Law of Sentencing Sec. 126 at 387 (1978) (footnotes omitted). See ABA Standards Relating to Appellate Review of Sentences 26 (App. Draft 1968) ("It is shocking, to say the least, that the United States is the only country in the free world where not only can a single man sentence without explaining why, but where there is no regular channel for review of his work."). See also C. Wright, supra, at Sec. 533. The Sentencing Reform Act of 1984, Pub.L. No. 98-473, 98 Stat. 1837, establishes a commission to set sentencing ranges for each federal criminal offense, and authorizes defendants to appeal sentences harsher, and the government to appeal sentences more lenient, than commission guidelines. Id. at Sec. 213, 98 Stat. at 2011 [codified at 18 U.S.C. Sec. 3742] (effective Nov. 1, 1986)
 
 
 [4]
 Cf. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) ("principle that a punishment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence"); see also Hammurabi's Code Sec. 196 (c. 2100 B.C.) ("If a man destroy the eye of another man, they shall destroy his eye."); Deuteronomy 19:21 ("eye for eye, tooth for tooth, hand for hand, foot for foot"); Matthew 7:2 (King James) ("And with what measure ye mete, it shall be measured to you again.")
 
 
 [5]
 See e.g., W.S. Gilbert, The Mikado, Act ii (1885) ("My object all sublime/I shall achieve in time/To let the punishment fit the crime/The punishment fit the crime")
 
 
 [6]
 Timmons' only involvement, for example, was to lend money at the request of Louis Villar, see note 1 supra, to help finance what he was told were necessary ship repairs. Timmons was to be repaid in money, but when the ship returned, he was told that if he didn't accept marijuana instead, he might not be paid at all. Although he accepted the marijuana, the record suggests that Timmons promptly realized that he did not wish to be involved in drug trafficking and that Timmons had rehabilitated himself prior to arrest
 
 
 [7]
 Counsel for McKinney noted that kingpins in the smuggling operation received sentences far less harsh than those imposed here. In response, the court noted "counsel, just because somebody else does something that I consider highly inappropriate, doesn't mean that I have to follow those footsteps, that's one of the things that concerned me about this case more than anything else."
 
 
 [8]
 As we have said, our remand should not be construed as suggesting that the imposition of the maximum statutory term would be necessarily impermissible for any defendant in this case. Similarly, our remand should not be construed as rejection of the sentiments expressed by the district court
 
 
 [9]
 The following colloquy is illustrative:
 COUNSEL: On the other hand, we have two defendants that were all arrested in 1977, all of whom were much more involved than Mr. McKinney, and every one of them got probation.
 THE COURT: That's one of the reasons why we have a high crime rate in this country, why it's successful to peddle tons of marijuana, because people know they can get away with it. That's the reason. It's a profitable business. This is involving millions and millions of dollars.... If you were going to get probation, why not do it? So you have children dying on the streets, ... involved in burglaries and robberies to get the money to pay for it. Sure, fine and dandy.
 
 
 [10]
 See generally M.P. Golding, Philosophy of Law 69-86 (1975); LaFave & Scott, supra Sec. 5; Campbell, supra note 3, at Sec. 5; J. Andenaes, Punishment and Deterrence (1974); F. Zimring & G. Hawkins, Deterrence (1973)
 
 
 [11]
 While the sentencing factors that compete in this case are those of general deterrence and individualization of sentencing, we do not mean to suggest that there are no other factors to be considered. See United States v. Bergman, 416 F.Supp. 496, 500 (S.D.N.Y.1976)
 
 
 [12]
 See, e.g., Deuteronomy 21:21; Plato's Laws: "The purpose of [punishment] is not to cancel the crime--what is once done can never be made undone--but to bring the criminal and all who witness his punishment in the future to complete renunciation of such criminality...." Bk. xi, 934a-b, reprinted in The Collected Dialogues of Plato 1484 (Taylor trans. 1961) (emphasis added)
 
 
 [13]
 As Lord Halifax, Lord Privy Seal and Chief Minister of the Crown, observed, "[m]en are not hang'd for stealing Horses, but that Horses may not be stolen." George Savile, Marquess of Halifax, Political, Moral, and Miscellaneous Reflections (1750), reprinted in The Complete Works of George Savile 229 (1912). See also Hopt v. Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884) (citing 4 W. Blackstone, Commentaries 11)
 
 
 [14]
 As the First Circuit has observed, "[T]he view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others. This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others." Foss, 501 F.2d at 527 (citation omitted); see also Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)
 
 
 [15]
 Indeed, even a policy of making the punishment fit the crime precludes the unfettered pursuit of deterrence. Deterrence might be well served by a death penalty for double parking, but no one suggests that such a punishment would be appropriate
 
 
 [16]
 In Kant's imperative that we treat others "never as a means only but always as an end also," the modifiers "only" and "also" are central to the meaning. See W. Kaufman, The Faith of a Heretic 291 (1959)
 
 
 [17]
 See. e.g., Foss, 501 F.2d at 528 (when individualizing a sentence, district court may consider general deterrence); United States v. Elliott, 674 F.2d at 756; Bergman, 416 F.Supp. at 499 (citing H.L.A. Hart, Punishment and Responsibility 243-44 (1968); Andenaes, "The Morality of Deterrence," 37 U.Chi.L.Rev. 649 (1970); O. Holmes, The Common Law 43-44, 46-47 (1881))
 
 
 [18]
 "The court's duty to 'individualize' the sentence simply means that, whatever the judge's thoughts as to the deterrent value of a jail sentence, he must in every case reexamine and measure that view against the relevant facts and other important goals such as the offender's rehabilitation. Having done so, the district judge must finally decide what factors, or mix of factors, carry the day...." Foss, 501 F.2d at 528
 
 
 [19]
 While the Sentencing Reform Act of 1984 requires district courts to consider the need, in imposing sentence, "to afford adequate deterrence to criminal conduct," supra note 2 at Sec. 212, 98 Stat. at 1989 [codified at 18 U.S.C. Sec. 3553(a)(2)(B) ], deterrence is simply one of several mandatory factors, first of which is "the nature and circumstances of the offense and the history and characteristics of the defendant." Id. [codified at 18 U.S.C. Sec. 3553(a)(1) ]
 
 
 [20]
 Although we are confident that the original judge would fully comply with the spirit and intent of this opinion, we nevertheless think it appropriate that defendants be resentenced by a different district court judge. See, e.g., U.S. v. Alverson, 666 F.2d 341, 349 (9th Cir.1982); Wardlaw, 576 F.2d at 939. We so direct