**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick RYAN and William Schwener,
Defendants-Appellants.**

**Nos. 85–2946, 85–3007.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1986.
Decided Jan. 16, 1987.

Michael J. Costello, Costello Long & Young & Dvorak, Ltd., Peter K. Woody, Springfield, Ill., for defendants-appellants.

Larry A. Mackey, U.S. Atty., K. Tate Chambers, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

FLAUM, Circuit Judge.

Defendants Schwener and Ryan were each placed in civil contempt for refusing to testify before a federal grand jury. Each defendant failed to purge himself of the civil contempt, and each was subsequently convicted of criminal contempt for the same refusal to testify. They now appeal their convictions, arguing, *inter alia*, that the criminal contempt proceedings against them were barred by the double jeopardy clause and by res judicata. We affirm the defendants' convictions.

## I.

The facts as to each defendant are similar. In December, 1983, defendant Schwener pleaded guilty to cocaine trafficking and related tax charges in federal court, and was sentenced to seven years imprisonment. The plea agreement specifically stated that Schwener understood his testimony would later be asked for by a grand jury. In January, 1984, Schwener was ordered to testify before a federal grand jury about his knowledge of drug trafficking. The order granted Schwener federal statutory use immunity, under which his testimony before the grand jury could not be used to prosecute him except for "perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002 (1982).

Schwener appeared before the grand jury but refused to identify all of his drug suppliers, claiming that he feared retribution against himself and his family. On January 27, 1984, the court placed Schwener in civil contempt under 28 U.S.C. § 1826 for this refusal to testify. The contempt order mandated that he be jailed until he testified or until the term of the grand jury expired, whichever occurred first. The term of the grand jury expired on June 7, 1985, and on that day Schwener, having failed to testify, was indicted for criminal contempt under 18 U.S.C. § 401(3). After Schwener's motion to dismiss the indictment was denied, he pleaded guilty. He was sentenced to two years imprisonment, to run consecutively with his previous sentence.

In July, 1984, defendant Ryan pleaded guilty in Illinois state court to unlawful delivery of a controlled substance and was sentenced to six years imprisonment. In

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

October of 1984, Ryan was ordered to appear before a federal grand jury and testify about certain alleged drug trafficking activities. Like Schwener, Ryan had received federal statutory use immunity pursuant to 18 U.S.C. § 6002 but nevertheless refused to testify before the grand jury; the record does not show for what reason. Ryan was placed in civil contempt under 28 U.S.C. § 1826 and jailed until he testified or until the term of the grand jury expired, whichever occurred first. On June 7, 1985, although the term of the grand jury had not yet expired, Ryan was indicted for criminal contempt under 18 U.S.C. § 401(3). After his motion to dismiss the indictment was denied, Ryan pleaded guilty and was sentenced to two years imprisonment, to be served consecutively with his prior sentence.

## II.

## A.

Schwener and Ryan, together and separately, raise a number of objections to their convictions. We consider the arguments made by both defendants first.

First, Schwener and Ryan both argue that the imposition of civil and criminal penalties for their refusals to testify before the grand jury violates the double jeopardy clause of the Fifth Amendment. Schwener also invokes "res judicata or collateral estoppel" to challenge his conviction. Second, Schwener and Ryan argue that the

government was precluded from indicting them for criminal contempt until the term of their civil contempt sentences ended. We reject both of these arguments.

### 1. *Finality*

### a. *Double Jeopardy*

The double jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. However, "Congress may impose both a criminal and civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to *punish criminally*, for the same offense." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 359, 104 S.Ct. 1099, 1103, 79 L.Ed.2d 361 (1984) (emphasis added) (*quoting Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938)). Thus, the Supreme Court has held on several different occasions that the imposition of civil and criminal contempt sanctions for the same conduct does not violate the double jeopardy clause. *See Yates v. United States*, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957); *Rex Trailer Co. v. United States*, 350 U.S. 148, 150–51, 76 S.Ct. 219, 220–21, 100 L.Ed. 149 (1956); *United States v. United Mine Workers of America*, 330 U.S. 258, 298–99, 67 S.Ct. 677, 698–99, 91 L.Ed. 884 (1947).[1]

---

1. The double jeopardy clause is not implicated in such cases because a civil contempt proceeding, unlike a criminal contempt proceeding, is not a "jeopardy" within the meaning of the double jeopardy clause. A criminal contempt proceeding is punitive in nature; its purpose is to vindicate the authority of a court by punishing one who violates that court's order. *See, e.g., Local 28 of Sheet Metal Workers Internat'l Ass'n v. EEOC*, —— U.S. ——, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986); *Yates*, 355 U.S. at 74, 78 S.Ct. at 133; *Thompson v. Cleland*, 782 F.2d 719, 721 (7th Cir.1986). Because "criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), a criminal contempt proceeding clearly constitutes a "jeopardy of life or limb" within the meaning of the double jeopardy clause. In contrast, a civil con-

tempt sanction is coercive or remedial in nature; its purpose is only to compel compliance with a court order, or to compensate an injured party. *See Local 28,* 106 S.Ct. at 3033; *Yates,* 355 U.S. at 74, 78 S.Ct. at 133; *Thompson,* 782 F.2d at 721. The double jeopardy clause therefore does not bar the imposition of civil and criminal contempt sanctions for the same conduct. *Cf. United States v. One Assortment of 89 Firearms,* 465 U.S. at 361, 104 S.Ct. at 1104 ("[N]either collateral estoppel nor double jeopardy bars a civil remedial forfeiture proceeding initiated following an acquittal on related criminal charges."); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235–36, 93 S.Ct. 489, 492–93, 34 L.Ed.2d 438 (1972) (*per curiam*) (double jeopardy clause did not bar a civil action for forfeiture of a ring and stones when the

### b. *Res Judicata and Collateral Estoppel*

■ Schwener also argues that res judicata or collateral estoppel bars a criminal contempt proceeding that takes place in the wake of a civil contempt sanction for the same conduct. We disagree.

■ The doctrine of res judicata applies to criminal proceedings. *Sealfon v. United States,* 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948); *United States v. Oppenheimer,* 242 U.S. 85, 88, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916). Res judicata contains two related but distinct principles of judicial finality, merger and bar. "Merger" means that a plaintiff who obtains a final judgment may not thereafter maintain a second action against the defendant on the same claim. Restatement (Second) of Judgments § 18; *see Jones v. City of Alton,* 757 F.2d 878, 879 n. 1 (7th Cir.1985); *Whitley v. Seibel,* 676 F.2d 245, 248 n. 1 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982). "Bar" means that a final judgment in favor of a defendant bars a second action by the plaintiff on the same claim. Restatement (Second) of Judgments § 19; *see Jones,* 757 F.2d at 879 n. 1; *Whitley,* 676 F.2d at 248 n. 1.

In this case, because Schwener was the defendant in the first action and judgment was entered against him, the bar prong of res judicata is unavailable to him. Moreover, even merger fails him, because one of the essential elements of res judicata is missing in this case. "The three threshold requirements of res judicata are: (1) an identity of the parties or their privies; (2) an identity of the causes of action, and (3) a final judgment on the merits." *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 595 n. 9 (7th Cir.1986); *see Spiegel v. Continental Illinois Nat'l Bank,* 790 F.2d 638, 645 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). Here,

the second element is lacking. In this circuit, a "cause of action" is "a single core of operative facts which give rise to a remedy." *Car Carriers,* 789 F.2d at 593. To find Schwener and Ryan in civil contempt, the only necessary facts were that the court ordered them to testify and that they did not do so. To find Schwener and Ryan guilty of criminal contempt under 18 U.S.C. § 401, however, the government was required to prove, beyond a reasonable doubt, not only that each defendant was aware of an order that he testify, but that each defendant willfully disobeyed that order. *See United States v. Ray,* 683 F.2d 1116, 1127 (7th Cir.), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982); *United States v. Eichhorst,* 544 F.2d 1383, 1385 (7th Cir.1976); *United States v. Greyhound Corp.,* 508 F.2d 529, 531–32 (7th Cir.1974). Because the operative facts necessary to make out a finding of civil and criminal contempt are different, there is no identity of causes of action, and res judicata was no bar to the criminal contempt actions.

■ Similarly, the doctrine of issue preclusion embodied in collateral estoppel does not help Schwener here. The doctrine of collateral estoppel is embodied in the double jeopardy clause. *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Collateral estoppel, also known as "issue preclusion," means that when an essential issue of fact or law is determined in a final judgment, that determination becomes conclusive in a second action between the parties, whether the second action is on the same or a different claim. Restatement (Second) of Judgments § 27; *see United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). Collateral estoppel may sometimes effectively result

owner had previously been acquitted on smuggling charges).

Similarly, sanctions for civil and criminal contempt that arise out of the same conduct do not violate the double jeopardy rule against "successive prosecution and cumulative punish-

ment for a greater and lesser included offense," *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977), because civil contempt is not an "offense" within the meaning of that doctrine.

in a bar on further proceedings, as when the defendant was acquitted in the first case and the state, in a second prosecution, attempts to relitigate facts that are crucial to its case in both proceedings. *See Ashe v. Swenson, supra.*[2] However, this is not the case here. Schwener did not prevail on any issue in the first action, and therefore cannot invoke collateral estoppel to prevent the second action. *See United States v. Williams,* 341 U.S. 58, 64 n. 3, 71 S.Ct. 595, 598 n. 3, 95 L.Ed. 747 (1951) (collateral estoppel did not bar prosecution of a second case against defendant when facts in first case were found against him); *Flittie v. Solem,* 775 F.2d 933 (8th Cir.1985) (rehearing *en banc*) (collateral estoppel inapplicable to second criminal proceeding when defendant convicted in first proceeding).

### 2. *Prematurity*

■ Finally, Schwener and Ryan both argue that the government was precluded from indicting them for criminal contempt until the time had run out to testify under their civil contempt sentences. They argue

that because they might have agreed to testify on the very last day of their civil contempt sentences, their indictments for criminal contempt before that date were premature.[3] However, this argument ignores the difference in nature and purpose between civil and criminal contempt.

The moment each defendant willfully disobeyed the court's order to testify, the offense of criminal contempt was complete. Even if the defendants had later yielded to the coercive pressure of their civil contempt sentences and testified, the testimony would not erase their prior willful disobedience. Punishment for the criminal offense therefore is permissible even after compliance with a civil sanction. *See United States v. Ray, supra* (criminal contempt conviction for refusing to provide a handwriting sample upheld, even though defendant might have at any time complied with the court's order).[4]

### B.

Schwener and Ryan also raise a number of individual objections to their convictions.

---

**2.** In *Ashe,* the defendant was accused of having been involved in the armed robbery of six people at a poker game. He was charged with seven separate offenses—the armed robbery of six people and the theft of a getaway car. At the trial for robbery of the first victim, Ashe was acquitted. At the second trial, with largely the same witnesses, he was convicted. The Supreme Court reversed the second conviction on collateral estoppel grounds, and stated:

> ... the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

397 U.S. at 445, 90 S.Ct. at 1195.

**3.** The factual basis for Ryan's argument is clear—it is undisputed that he was indicted before the end of his civil contempt sentence. The factual basis for Schwener's prematurity argument is somewhat more obscure. Schwener was indicted for criminal contempt on the day the grand jury expired, and thus on the day his civil contempt expired. He nevertheless argues that the indictment was premature, because the

civil contempt order refers to the date of expiration of the grand jury as July 11, four days after the actual expiration of the grand jury. Schwener argues that he was entitled to rely on this expected expiration date, and therefore he had until that date to testify.

**4.** However, in this context courts should remain mindful of the doctrine that a court must exercise "the least possible power adequate to the end proposed," *Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966) (*quoting Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821). This doctrine requires that a trial judge consider the feasibility of coercing testimony before a grand jury through the imposition of civil contempt before resorting to criminal sanctions. *Shillitani,* 384 U.S. at 371 n. 9, 86 S.Ct. 1536 n. 9; *see United States v. Wilson,* 421 U.S. 309, 317 n. 9, 95 S.Ct. 1802, 1807 n. 9, 44 L.Ed.2d 186 (1975); *see also Yates,* 355 U.S. at 75 (waiting to invoke a criminal sanction until after a civil sanction is imposed is not "fatal" to the court's criminal contempt powers, and is in fact a "more salutary procedure" than imposing both simultaneously); *United States v. Coachman,* 752 F.2d 685, 692–94 (D.C.Cir.1985) (discussing the need to avoid both the possibility and the appearance of "pyramidal punishment").

Two of these issues merit a detailed examination; the remainder we discuss only briefly.

### 1. Doctrine of Unconstitutional Conditions

Schwener planned to testify at his criminal contempt trial that the reason he had refused to testify before the grand jury was that he feared retaliation against himself and his parents. Schwener therefore filed a motion *in limine*, requesting the district court to prohibit the government from asking him any questions on cross-examination as to the identity of those persons who allegedly posed this threat. The district court denied Schwener's motion. Schwener argues that this denial violated the doctrine of unconstitutional conditions.

Schwener states quite correctly that the doctrine of unconstitutional conditions precludes the government from coercing the waiver of a constitutional right either by conditioning the exercise of one constitutional right on the waiver of another, *see, e.g., Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), or by attaching conditions that penalize the exercise of a constitutional right, *see, e.g., United States v. Jackson*, 390 U.S. 570, 583, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968). Schwener does not explain how he was placed in this position by the district court's denial of his motion *in limine*. However, a similar issue arose in *United States v. Pizarro*, 717 F.2d 336 (7th Cir.1983), *cert. denied*, 86 L.Ed.2d 703, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985).

In *Pizarro*, the defendant, prior to taking the stand, sought to preclude the government from inquiring into the identity of his heroin supplier on cross-examination. The defendant argued that the trial court's refusal to grant his motion *in limine* violated the doctrine of unconstitutional conditions, because requiring him to identify his heroin supplier forced him to choose between his right to testify on his own behalf and his "right to life." *Pizarro*, 717 F.2d at 348. We rejected this claim because the government was not threatening his right to be free of bodily harm—a third party was. *Id. Pizarro* is controlling here.

Schwener attempts to distinguish *Pizarro* on the ground that in that case the defendant testified, whereas Schwener did not. Schwener also points out that in *Pizarro* the identity of the defendant's source was inadmissible under the Federal Rules of Evidence. These distinctions make no difference. If the government forces a defendant to choose between constitutional rights, which right the defendant surrenders does not alter the analysis. Similarly, whether the testimony is admissible under the Federal Rules of Evidence is a separate question from the government's alleged attempt to coerce the waiver of a constitutional right. The district court did not err in refusing to limit the government's cross-examination.[5]

### 2. Ryan's Presentence Report

Ryan argues that the district court erred in failing to strike material to which he objected from his presentence report. Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure permits a defendant to challenge any matters in the presentence report. When a defendant alleges inaccuracies in the report, Rule 32(c)(3)(D) requires that the sentencing court either make written findings as to these allegations, or make a written determination that the disputed matters will not be relied on in sentencing. The written findings or writ-

---

**5.** The government also points out that if Schwener's motion *in limine* had been granted, his duress defense would have effectively been shielded from inquiry. Overturning the district court's refusal to grant the motion *in limine* would thus create an incentive for a person who chose not to testify before a grand jury to assert a duress defense at the later criminal contempt trial, obtain a motion *in limine* preventing cross-examination, and successfully avoid conviction. This result would limit the impact, in such cases, of the significant evidentiary burden a defendant must carry when asserting the defense of duress to a crime, *see United States v. Patrick*, 542 F.2d 381, 386–87 (7th Cir.1976).

ten determination must then be attached to the presentence report. The purpose of Rule 32 is to protect the defendant's due process right to a fair sentencing procedure and to provide a clear record of the disposition of disputed facts in the presentence report. *United States v. Reynolds*, 801 F.2d 952, 957–58 (7th Cir.1986); *see Kramer v. United States*, 798 F.2d 192, 194 (7th Cir.1986); *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir. 1986).

In this case, the judge stated at the sentencing hearing that he would not rely on the disputed information in sentencing Ryan, but he did not make any written determination to this effect. Moreover, rather than make written findings as to Ryan's allegations, he simply attached the defendant's list of objections to the report. This approach failed to comply with the mandate of Rule 32(c)(3)(D).[6] Despite this error, however, we need not remand for resentencing in this case because the judge clearly stated at the sentencing hearing that he imposed Ryan's sentence on information other than that challeged by the defendant. *See Eschweiler*, 782 F.2d at 1390 ("[R]equiring resentencing when the record is clear that the sentencing judge did not rely on a contested matter does not further the purpose of Rule 32(c)(3)(D)."); *cf. Reynolds*, 801 F.2d at 958 (case remanded for resentencing where "unclear whether and to what degree the contested information may have played a part in the decision.").

### 3. *Remaining Issues*

 Schwener raises several other claims, all lacking merit. Schwener first argues that in order to indict a defendant for criminal contempt for refusal to testify before a grand jury, the government must demonstrate that the defendant's testimony is necessary to its case. We rejected this argument in *Matter of George Sinadinos*, 760 F.2d 167 (7th Cir.1985). There, we reasoned that in order to make such a demonstration of need, the grand jury would have to reveal so much about the state of its investigation that the disclosure would conflict with the grand jury's "traditional rule of secrecy." *Id.* at 170. *See also United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423–24, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1983) (a grand jury carries on its work expeditiously and in secret); *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 230 (1974) (courts should permit the grand jury to proceed "substantially unhindered."). It makes no difference that *Sinadinos* involved only civil contempt, whereas this case involves criminal contempt. As we noted in *Sinadinos*, "So far as we are aware, no court has ever required a grand jury to show 'that the information [is] not already in the possession of the government,' as a condition of requiring a witness to testify, in the absence of a claim of privilege. We will not be the first." 760 F.2d at 172.

 Second, Schwener argues that his contempt indictment was precluded by the grant of statutory use immunity and by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), in which the Supreme Court held that a defendant may not be prosecuted on the basis of immunized testimony. Schwener's first argument is simply factually incorrect. The order granting Schwener immunity specifically states that Schwener is *not* immune from "a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002.

---

6. As we noted in *Reynolds:*

[A]llowing the defendant to attach a memorandum outlining his grievances does not meet the Rule's requirements that the court attach a written determination of its findings or determination to the presentence report. First, the court has not made any findings under this approach. The Rule imposes an obligation on the court, not the defendant, to deal with and respond to presentence report complaints before sentencing a defendant. Second, the purpose of providing prison and parole authorities with a clear record of how disputes were resolved is not met by simply having the defendant list his grievances and attaching them to the presentence report. *Reynolds*, 801 F.2d at 958.

Schwener's refusal to testify before the grand jury was a failure to comply with the order. The indictment and ensuing prosecution were therefore not precluded. Schwener's second argument similarly fails. *Kastigar* does not help Schwener because Schwener was not prosecuted for anything he said, but for his failure to say anything at all.

 Finally, Schwener contends that the district court judge impermissibly failed to exercise his discretion in sentencing Schwener, because the judge imposed the same two-year sentence on defendants in at least five other criminal contempt cases. Schwener's argument is apparently that, because other defendants received the same sentence for the same crime as he, the judge failed to consider individual factors when sentencing him. However, a trial judge has broad discretion in sentencing, and a sentence will be overturned only upon a showing of abuse of discretion. *See United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Goudy,* 792 F.2d 664, 678 (7th Cir.1986).

Schwener relies on *United States v. Barker,* 771 F.2d 1362 (9th Cir.1985). In *Barker,* a criminal sentence was reversed because it was plain from the record that the trial court did not adequately consider individual factors, but simply gave all the defendants before him the maximum sentence, even though their culpability was clearly not the same. The judge also repeatedly alluded to the enormous societal harm he attributed to their crime. *Barker,* 771 F.2d at 1367. This case is readily distinguishable. The record shows that Judge Mills considered individual factors when sentencing Schwener. There is no abuse of discretion in this case.

### III.

We conclude that the finding of both civil and criminal contempt for the same conduct against Schwener and Ryan did not violate the double jeopardy clause of the Fifth Amendment and that their criminal contempt indictments were not premature.

We reject the remainder of Schwener's and Ryan's separate arguments. The decision of the trial court is therefore affirmed.