988 F.2d 123
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald CRUTCHFIELD, Defendant-Appellant.
 No. 91-50631.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided March 10, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-0497-KN-07; David V. Kenyon, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before FLETCHER, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ronald Crutchfield was convicted of manufacturing PCP in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to a term of imprisonment of twenty-five years and levied a $4 million fine. He contends that the fine was imposed in an improper manner. We disagree, and affirm.
 
 
 3
 I. Facts.
 
 
 4
 Crutchfield was a mid-level member of the Johnson narcotics distribution organization, according to the presentence report. His primary function was to cook and distribute PCP. The organization, according to the presentence report, was quite profitable, generating millions of dollars worth of assets from its narcotics business. When the drug ring was broken up, Crutchfield pleaded guilty to one count of manufacturing PCP. The district court imposed a $4 million fine, the statutory maximum. Crutchfield timely appealed his sentence.
 
 
 5
 Over $1.5 million was found in a safe underneath one of the organization's safe houses, when the government executed its first round of search warrants. Three other empty safes were found later, including one that showed signs of having been broken into before the police retrieved it. The district judge decided that probably at least $4.5 million of the Johnson organization's money was still unaccounted for, because (1) $1.5 million had been found in one safe, (2) the three empty safes were intended to house the proceeds of the organization's drug sales, (3) there were a lot of people who were involved in the organization who were not indicted by the government, and (4) the organization was quite adept at laundering its profits. The court also inferred that Crutchfield might gain access to this money, because he was a sufficiently high-ranking member of the Johnson organization.
 
 
 6
 In addition to his concerns about the money which had evidently been removed from the empty safes, the judge took note of Crutchfield's financial disclosure report showing no assets, no debts, no income, and no expenses, and of Crutchfield's statement that he did not know how his attorney was being paid. The judge estimated the attorney's fees for all the defendants in the several hundred thousand dollar range, and engaged in an extended colloquy to assure that the defendants were satisfied to proceed with shared counsel despite their potential conflict of interests.[1] Considering all the facts, the sentencing judge said "I am thoroughly convinced that not all the monies have surfaced in this case." He had ample grounds for this determination.
 
 
 7
 The troubling aspect of the fine is that it is so large, and the record does not tie the money firmly to Crutchfield. The probation officer found no indication from Crutchfield's assets and lifestyle that he had benefitted much, and doubted he would be able to pay any fine after release.
 
 
 8
 Crutchfield refused to discuss the offense or his role in the Johnson organization with the probation officer. The financial disclosure report had to be false; Crutchfield had children to whom he would owe child support, and, according to the probation officer, had supported himself by crime for ten years. His role in the manufacture of PCP required years of experience to acquire the necessary expertise. The minimum amount of PCP embraced by the charge to which Crutchfield pleaded guilty was worth $200,000 to $300,000 and was equivalent to 36,250,000 doses.
 
 
 9
 II. No Abuse of Discretion.
 
 
 10
 18 U.S.C. § 3622 (repealed) was effective from January 1, 1985, to November 1, 1987, so it applies to Crutchfield's offense, which was committed on October 9, 1987. It provides that in determining the amount of a fine, the sentencing court "shall consider" various factors. These factors include "the defendant's income, earning capacity, and financial resources," § 3622(a)(3), "the burden that the fine will impose upon the defendant," § 3622(a)(4), and "the need to deprive the defendant of illegally obtained gains from the offense." § 3622(a)(7). This was a pre-Guidelines offense, so Crutchfield cannot benefit from the Guidelines ceilings and the Guidelines limitations on departures.
 
 
 11
 The sentencing court's determination of the amount of a fine under § 3622 is reviewed for abuse of discretion. United States v. Weir, 861 F.2d 542, 545 (9th Cir.1988), cert. denied, 489 U.S. 1089 (1989). "There is no abuse of discretion when the court had before it information bearing on all the relevant factors, including facts necessary to consider imposition of a substantial fine, absent a record showing the court refused to consider the section 3622(a) factors." Id.
 
 
 12
 There is no gainsaying the fact that all the required information was before the judge. The transcript of the sentencing gives no reason to believe that he refused to consider any of the section 3622(a) factors. The court imposed a $4 million fine largely to prevent Crutchfield from using any of the Johnson organization's ill-gotten gains after he got out of prison. This reason fits within "the need to deprive the defendant of illegally obtained gains from the offense." § 3622(a)(7).
 
 
 13
 The court's conclusion is not groundless, so it passes constitutional muster. United States v. Borrero-Isaza, 887 F.2d 1349, 1352 (9th Cir.1989). However, there was nothing before the court to show who had the missing money, whether it was shared, or whether Crutchfield would be able to get any of it at any time. The defense argued that the court's objective of depriving Crutchfield of his ill-gotten gains could be served without imposing any fine, because any money that he got through narcotics trafficking is subject to forfeiture anyway. The court rejected this argument because it would require further litigation by the government, and we find no abuse of discretion in this.
 
 
 14
 The judge had adequate reasons to believe that more than $4,000,000 in drug money had been successfully hidden, and that Crutchfield was important enough in the organization that he might well have access to it. But for all the judge knew, Johnson or someone else had all of the money, and Crutchfield would never see any of it. Crutchfield was not telling--he refused to talk about it and submitted a financial statement which the court was entitled to treat as false. The burden was on Crutchfield to make some showing of his inability to pay a fine. Cf. United States v. Rafferty, 911 F.2d 227, 232 (9th Cir.1990) ("The guidelines establish that it is the defendant's burden to prove he is unable to pay a fine."); U.S.S.G. § 5E1.2(f) (Nov.1992). The judge could properly exercise discretion on the basis that there were still millions of dollars held by the organization, the organization was holding together through pleas and sentencing instead of the members turning on each other, and that Crutchfield was sufficiently prominent in the organization that he probably would have access to the money when he got out of prison.
 
 
 15
 The defense argues that, facing so large a fine, Crutchfield will never be able to support himself by honest work. This is a troubling aspect of a large fine. But the argument proves too much. The reply brief says "Mr. Crutchfield cannot pay a fine of four million dollars or even four thousand dollars." Does that mean a $4,000 fine would be an abuse of sentencing discretion? If Crutchfield's financial statement were true, he would be unable to pay even a small fine, but the argument suggests that even a moderate fine, perhaps $100,000, would be reversible error, an untenable proposition. Criminal penalties may often create a permanent disability affecting the ability to earn an honest living, either because of the stigma of conviction, the effects of institutionalization, or the financial consequences of fines and litigation expenses, but the means of avoiding these problems while preserving the district court's discretion to impose lawful sanctions is not apparent.
 
 
 16
 III. The Sentence was Individualized.
 
 
 17
 The court has to exercise its discretion in sentencing the defendant, and cannot rely on some mechanical formula. United States v. Barker, 771 F.2d 1362, 1365-67 (9th Cir.1985). Crutchfield argues that the court failed to do so, because it sentenced him to "joint and several liability" on the fine. We find no support for this proposition in the record.
 
 
 18
 First, the court imposed the fines severally, and explained that it was doing so, even though its underlying rationale for the amount was similar to a joint and several fine. The judge addressed the defendants one by one in a lengthy sentencing proceeding, and imposed the $4,000,000 fine on Crutchfield alone, separately from the other defendants.
 
 
 19
 Second, different defendants got different fines. The judge did not mechanically impose identical fines. The record demonstrates an individualized exercise of discretion which the sentencing judge knew he had. The court imposed substantial fines on the "core defendants," and lesser fines on money runners and lower-level distributors. The court did not abandon its duty to exercise its sentencing discretion when it imposed Crutchfield's fine.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Crutchfield argues that the judge unconstitutionally punished him for obtaining counsel, but the transcript belies the argument. The judge's questions and remarks regarding attorney's fees were directed toward two goals: assuring the validity of the pleas despite payment of attorneys by someone other than their clients, and considering whether Johnson organization money remained unseized. The context of the remarks makes it plain that the significance of the judge's determination regarding funds used to pay counsel was with regard to his determination that the government had not found all the money, not to punish defendants who took advantage of their constitutional right to counsel