**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>JAVIER SEBASTIAN ANDRES,<br><br>Defendant - Appellant. | No. 15-10428<br><br>D.C. No. CR-14-01461-PHX-NVW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Before: TASHIMA and M. SMITH, Circuit Judges, and KORMAN,[**] District Judge.

Defendant Javier Andres imported a 16-year-old girl (the "Victim") from rural Guatemala to Arizona. Andres arranged the Victim's passage in return for an agreement that she work in his home for three years to repay her purported smuggling

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

debt. Andres and his wife told the Victim that she could not leave until she personally paid her debt. Indeed, they declined an offer by her brother-in-law to pay it. Moreover, they threatened to have her hunted down if she left without permission. Later, Andres raped and impregnated the Victim, who suffered severe pain and a second-degree perineal tear during delivery.

After he was indicted, Andres agreed to plead guilty to one count of Harboring an Alien for Private Financial Gain. *See* 8 U.S.C. § 1324(a)(1)(B)(i). The plea agreement stipulated that he would receive a within-Guidelines sentence, which the PSR ultimately calculated to be between 21 and 27 months. At sentencing, the district court rejected the agreement after finding that the stipulated range would not reflect the seriousness of Andres's conduct. Nevertheless, when the district judge offered him the opportunity to withdraw his guilty plea, Andres declined to do so.

Sentencing then proceeded unbound by any agreement. The district judge adopted the PSR's factual findings. While he also adopted the PSR's calculation of the Guidelines range, the judge ultimately departed upward—sentencing Andres to 40 months imprisonment. Andres appeals his sentence, contending that the district court erred by rejecting his plea agreement, and by imposing certain sentencing enhancements. We find no merit in his challenges, and affirm his sentence.

1.   Andres complains that the district judge erred by not considering the sentencing factors enumerated at 18 U.S.C. § 3553(a) before rejecting the stipulated sentence. This argument fails because § 3553(a) specifies the factors a judge must consider "in determining the particular sentence to be imposed." Rejecting a plea agreement that contains a stipulated sentence, however, does not determine a "particular sentence." Indeed it does not determine any sentence at all. Moreover, in substance, the district judge made the findings that § 3553(a) would otherwise require. Specifically, he found that Andres's conduct was of a very serious nature, that the plea agreement did not adequately reflect the seriousness of the offense conduct, and that a significant sentence would deter more human trafficking.

The same findings also satisfied the district judge's obligation to give Andres's plea agreement the individualized consideration required by *Morgan v. U.S. Dist. Court (In re Morgan)*, 506 F.3d 705, 712 (9th Cir. 2007). The district judge emphasized specific circumstances—his coercion and sexual exploitation of the Victim—that distinguished Andres's conduct from the essential elements of his harboring conviction, and warranted a greater sentence than that stipulated in the plea agreement. The district judge likewise properly weighed the public deterrence that might flow from a heavier sentence than the plea agreement would have allowed. Stretching back before the Sentencing Guidelines—which, of course, *require*

3

sentencing judges to take public deterrence into account, 18 U.S.C. § 3553(a)(2)(B)—a policy of individual assessment has never barred consideration of a potential sentence's broader effects. *See, e.g.*, *United States v. Barker,* 771 F.2d 1362, 1368–69 (9th Cir. 1985).

2. The remainder of Andres's contentions on appeal pertain to the district judge's calculation of his Guidelines range. Andres challenges the court's application of an enhancement for Involuntary Detention under § 2L1.1(b)(8)(A) (2014) of the Sentencing Guidelines, and one for causing Serious Bodily Injury under § 2L1.1(b)(7)(B) of the same.

Section 2L1.1(b)(8)(A) of the Sentencing Guidelines applies "[i]f an alien was involuntarily detained through coercion or threat, or in connection with a demand for payment" while being harbored in the United States. Andres argues that the Victim could not have been "involuntarily detained" because the phrase requires the use or threat of *physical* restraint or injury. He is incorrect.

Courts interpret the Guidelines just like statutes: the plain text, read in light of its context and structure, is controlling. *United States v. Rivera-Constantino*, 798 F.3d 900, 903–04 (9th Cir 2015). Something is involuntary if it is "[d]one against someone's will." *Involuntary*, THE OXFORD DICTIONARY OF ENGLISH,

4

http://www.oxforddictionaries.com/definition/english/involuntary. And here, the text clearly states the means "through" which an alien may be involuntarily detained—"threat or coercion." A "threat," of course, need not be to use physical force. And the ordinary meaning of "coercion" is not limited to coercion by physical force. *See Coercion*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Compulsion of a free agent by physical, moral, or economic force or threat of physical force."). Moreover, the Sentencing Commission's statement of reasons, to which a court looks for "guidance," *United States v. Ornelas*, 825 F.3d 548, 554 (9th Cir. 2016), specifically explains that § 2L1.1(b)(8)(A) is meant to account for "involuntary detainment . . . [that] may not involve physical restraint," U.S. SENTENCING GUIDELINES MANUAL app. C, vol. III, at 180 (Amendment 692).

Andres also fails in his attempts to cast doubt on the district judge's finding that the Victim was in fact involuntarily detained through coercion or threat, or in connection with a demand for payment. The Victim wanted to leave, but Andres and his wife repeatedly told her that she was not allowed to do so, and threatened her with recapture if she left without permission. The main reason the Victim stayed was that these threats convinced her that escape would be hopeless. Voluntariness is a question of fact, *see, e.g.*, *United States v. Meza-Corrales*, 183 F.3d 1116, 1125 (9th Cir. 1999), and the district court's finding that the victim was involuntarily detained through

5

threat was not clearly erroneous. Neither was it clear error to find that this detention was connected to a demand for payment, where the Victim was told she could leave, but only if she paid $1,000.

We need not reach the merits of the Serious Bodily Injury enhancement. The district court found that Andres's base offense level was 12, and his adjusted offense level—after imposing both enhancements—was 18. Nevertheless, even without the Serious Bodily Injury enhancement, Andres's adjusted offense level would have remained 18, because the Involuntary Detention Enhancement requires a *minimum* adjusted offense level of 18. U.S.S.G. § 2L1.1(b)(8)(A) ("[If the enhancement applies], increase by 2 levels. If the resulting offense level is less than level 18, increase to level 18."). Under these circumstances, reversing the Serious Bodily Injury enhancement would not change Andres's offense level. There is no need to consider it further.

**AFFIRMED.**