**UNITED STATES of America,
Appellee,**

v.

**Stewart FOSS et al., Defendants-
Appellants.**

**No. 74–1083.**

United States Court of Appeals,
First Circuit.

Argued May 9, 1974.

Decided July 31, 1974.

---

524

Harvey A. Silverglate and Thomas G. Shapiro, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for appellants.

Lawrence P. Cohen, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

James W. Coveney, Jr. and Stewart Foss pleaded guilty to charges stemming from the illegal distribution of cocaine. 21 U.S.C. § 841. They contend on appeal that the district court abused its discretion by sentencing each of them to three years' imprisonment and denying their subsequent motion for reduction of sentence. Their principal complaint is that the court failed to "individualize" their sentences imposing imprisonment only because of a belief that "[h]ard narcotics demand hard sentences."

The offenses arise from a single transaction. Coveney, at the insistence of one Russo, persuaded Foss first to supply a small cocaine sample and then to sell for $1200 26 grams of cocaine to buyers who, unfortunately for appellants, turned out to be undercover agents.

Both Coveney and Foss are high school graduates, without significant criminal records and with good employment histories. They urge that imprisonment is plainly detrimental to their rehabilitation.

Coveney was raised in a stable home. However, he had an unhappy marriage and a divorce, and afterwards did not keep up child support payments. For four years he took part in the drug scene from which, he says, he has since

extricated himself. He was snorting cocaine daily at the time of his arrest, and admits that he was selling small quantities to friends to support his habit. He says that for facilitating the instant sale he was to receive only a small amount of cocaine for personal use. Imprisonment interrupts both his steady employment as a model maker and his plans to remarry.

Foss, engaged to Coveney's sister, came from a broken home in which he was under severe stress as described at length in a psychologist's letter. He was addicted to heroin but, according to the psychologist, was "one of the more lasting cures of heroin addiction I have encountered". It appears that he was no longer a heroin user at the time of the offense. He reportedly dealt in the cocaine as a favor to Coveney and for a small profit, which he claims was $50. The psychologist wrote that imprisonment would be a "tragedy" for Foss' heroin cure and would impose a "disaster" upon his already strained family, consisting of a mother, brother, and twin half brothers.

At the sentencing hearing each appellant and Russo, all then represented by the same attorney, were invited to inspect and offer corrections to their presentence reports. Told by counsel that Russo denied one piece of information in his report, the court ordered it stricken; Coveney and Foss did not object to anything in their reports. The court asked if there were distinctions among the three in degree of culpability. The Assistant United States Attorney said he thought not, except that Russo, although he had "set the entire thing in motion", had aided in the apprehension of another cocaine seller. Russo's cooperation led the court to sentence him to two years, while sentencing Foss and Coveney each to three (followed by the mandatory three year parole term).[1] The court then made the following statement which forms the basis of much of the argument on appeal.

"The reason for the sentence of the Court is simply the word cocaine. That is the one—That is the explanation. Hard narcotics in my opinion demand hard sentences, not because the Court has any fear that you gentlemen will start returning to dealings or facilitating the dealings in narcotics. In this morning's paper, it was reported that in New York City, arrests for narcotic sales have been cut 75 percent since the imposition of the harsh state penalties in New York State by the Administration of the State of New York. That isn't the reason for my sentences. It is just consistent with my view of trafficking in narcotics.

"I am well aware that you three young men were not dealers in the sense of big suppliers. If you were, the sentences would be very, very much more, as your lawyer could advise you. Anyone who facilitates the transactions in the hard narcotics—and I consider that cocaine is a hard narcotic—has to be made a lesson of, to cut down on the traffic, to cut down on relatively innocent persons like yourselves, who got caught up in the drug subculture, to the terrible misfortune in your own personal lives, the lives of your families—I have here a moving letter from the father of one of the defendants, and equally moving letter from the mother of another of the defendants.

"It is just too late. It is not just a question of your welfare as much as it is a question of the welfare of young people in this community who but for jail sentences of this type will be introduced to these narcotics, and in my view it is essential to take harsh steps to endeavor to bring the community out of this scourge.

1. Coveney, who had pleaded to a single count, was eligible for a sentence up to 15 years' imprisonment and a fine of $25,000. 21 U.S.C. § 841(b)(1)(A). There is no mandatory minimum sentence. Foss, who had pleaded to two counts, could have received double that.

"I have and must state that I considered the plea of guilty which has been entered here by each of these defendants. I have already stated as much as I will with respect to the distinction between Mr. Russo and the other two defendants."

About four months after sentencing new counsel for appellants filed Rule 35 motions claiming that the sentences were not individualized because they were unjustified by any need for rehabilitation, supported only by considerations of general deterrence, and based upon the district court's misapprehension of the nature of cocaine. Accompanying the motion were four affidavits from experts in cocaine research stating that cocaine is not a narcotic but a stimulant, that it is nonaddicting, and that it is harmless relative to alcohol, heroin, and amphetamines. In a companion motion appellants asked to examine the presentence reports because such was "necessary for the prosecution" of the Rule 35 motion.

The district court denied without opinion the motions to examine the presentence reports. It did, however, issue an opinion concerning the Rule 35 motions. No hearings were held. The court stated that "various points made in the motions and supporting memorandum are substantial and call for comment", but that it continued to believe that cocaine is properly classified by 21 U.S.C. § 812 as a Schedule II drug. Two studies were cited as showing that cocaine has "a high potential for abuse and for severe psychological dependence."

Stating that, although the "extent to which so-called general deterrence is a valid consideration in fixing sentences is indeed a difficult question", the court cited Justice Marshall's comment in Powell v. Texas, 392 U.S. 514, 531, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), that the validity of the deterrence justification has not been disproved. The court expressed a belief that "calculated crimes" were more likely to be deterred than crimes of passion; that those requiring several persons would be deterred ahead of offenses committed by single offenders; and that "it is still widely assumed that prison sentences have a generally deterrent effect." [citing Furman v. Georgia, 408 U.S. 238, 307, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)] Finally, the court stated that it had fully considered, and taken into account in the sentence, factors other than general deterrence:

"The court's statement at the time of sentencing did not undertake to state all of the reasons for the sentences imposed but rather the reasons that would enhance the hopefully deterrent effect of the sentences. By our arguably harsh sentences and statements of reasons in narcotics cases we are endeavoring not only to protect the community but also to deter potential narcotics sellers whom we believe will be informed of the type of sentences imposed in these cases, although there may be no mention of particular cases in public media of communication. We believe that this sort of information travels by word of mouth.

"Factors other than general deterrence were, of course, weighed and considered in determining the appropriate sentences. Codefendant Russo was treated differently for reasons that appear in the record. Consideration was given to defendant Foss's heroin habit of approximately two bags per day when he was addicted in 1970 and to the confidential psychological report attached to the presentence report in his case. An example of other factors than general deterrence considered in Coveney's case is his having experimented with drugs other than cocaine and his habit in November 1972 of snorting cocaine at the rate of a gram per day. These and other factors indicated the defendants' need for individual rehabilitation."

On appeal Foss and Coveney argue first that the district court's sentences

were not sufficiently individualized, either as a matter of constitutional or general law, or as required by Congress, which recently removed certain mandatory minimum sentences in narcotics offenses. Second, they argue that the district court improperly denied them a hearing on their claim that it was wrong in its beliefs concerning cocaine. Third, they contend that the procedure followed by the court deprived the defendants of their right of allocution. Finally, they claim that their new attorneys were erroneously denied access to the presentence reports.

## I

■ The rule is of long standing, and was reaffirmed this term, that a court of appeals may not reverse or tamper with a sentence that is within legal limits. Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 . . . (1974). See United States v. Walker, 469 F.2d 1377 (1st Cir. 1972). Appellants recognize the general doctrine, but rely upon an exception acknowledged in *Dorszynski*, permitting "limited review . . . when sentencing discretion is not exercised at all". *Id.* Sentences dictated by a "mechanistic" concept of what a particular type of crime invariably deserves have been held to fall within this exception: a judge holding such fixed ideas is presumably closed to individual mitigating factors. Thus appellate courts have vacated sentences reflecting a preconceived policy always to impose the maximum for a certain crime. United States v. Hartford, 489 F.2d 652 (5th Cir. 1974); United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739 (1970). A rigid policy involving even less than the maximum may be objectionable; any kind of mechanical sentencing that steadfastly ignores individual differences is to be avoided. *Cf.* United States v. Baker, 487 F.2d 360

(2d Cir. 1973); Woolsey v. United States, 478 F.2d 139 (8th Cir. en banc 1973). In United States v. Thompson, 483 F.2d 527 (3d Cir. 1973), the Third Circuit required disqualification of a judge with an announced policy of sentencing draft violators to 30 months if they were "good people" and more otherwise. The court said at 529,

"A fixed view as to sentencing is . . . inconsistent with the discretion vested in the trial judge that he may fulfill his mandate to tailor the sentence imposed to the circumstances surrounding each individual defendant."

Cf. United States v. Townsend, 478 F.2d 1072 (3d Cir. 1973). The Supreme Court said in Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L. Ed. 1337 (1949),

"[T]he punishment should fit the offender and not merely the crime. . . . The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender."

See also Williams v. Oklahoma, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959).

However, the view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others. See M. Frankel, Criminal Sentences: Law Without Order 106 (1972). This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others. A commentator describes it as "the only goal we can accept in advance for punishing all crimes committed by all persons, without scrutinizing the facts of the particular case in which punishment may be imposed." H. Packer, The Limits of the Criminal Sanction 63 (1968). There are widely differing views about general deterrence.[2] *Id.* at 39–45. But the Su-

2. The label is sometimes used to include aims which Judge Frankel describes separately as

"denunciation or condemnation", i. e., punishment " . . . as an affirmation and

preme Court's latest word makes it plain that even if we were so disposed, we could not announce the demise of general deterrence as a proper sentencing consideration. In Pell v. Procunier, 417 U. S. 817, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), the Court said,

> "An important function of the corrections system is the deterrence of crime. The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses."

■■ There thus remains room, even when imposing an acceptably "individualized" sentence, for a judge to look beyond the offender to the sentence's presumed effect on others. The court may send a bribe-taking official to jail even though there is little chance of a repeat offense, no public danger if he is free, and no likelihood that jail will rehabilitate him. The court's duty to "individualize" the sentence simply means that, whatever the judge's thoughts as to the deterrent value of a jail sentence, he must in every case reexamine and measure that view against the relevant facts and other important goals such as the offender's rehabilitation. Having done so, the district judge must finally decide what factors, or mix of factors, carry the day. While the judge's conclusions as to deterrence may never be so unbending as to forbid relaxation in an appropriate case, they may nonetheless on occasion justify confinement although other factors point in another direction.

■■ Whether the threat of jail deters trafficking in drugs is, of course, controversial, especially when the individuals jailed are small dealers and first offenders. Many views are held on the "criminalization" of drug offenses, the

nature of desirable penalties, and the lines to be drawn between those who deal on a large and on a small scale. But we cannot say, as a matter of law, that deterrence is an inappropriate consideration in drug cases generally or in this case. By abolishing mandatory minimum sentences for first offenders, Congress, when it adopted the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., undoubtedly signalled an end to inflexible minimums for first offenders in favor of a more flexible sentencing policy. Were we satisfied that the judge in this case was substituting his own preconceived version of a minimum term, we would hold the sentence invalid. But, as we shall indicate, we do not think that he did so. Moreover, although the history of the 1970 Act reflects far more sympathy than formerly to rehabilitative goals, it does not show that Congress meant to exclude all others. The House Committee describes the bill as combining "both the punitive and rehabilitative approaches to the problem of drug abuse", and speaks of attacking the "illegal traffic in drugs . . . with the full power of the Federal Government"; the price of such traffic is to be made "prohibitive" and "too dangerous to be attractive". 1970 U.S.Code Cong. & Admin.News, pp. 4566, 4574–4575. The 1970 Act does provide lesser penalties for mere users than for those who deal, and it shows some special solicitude for marijuana users and distributors. 21 U.S.C. § 841. Neither appellant, however, falls within any such category. The district court did not overstep limits imposed by the statute itself. Balancing the different and sometimes conflicting sentencing aims, including general deterrence, was a task for the sentencing court.

The judge did not act mechanically. The sentences were well below the maxi-

---

re-enforcement of moral standards and as reassurance to the law-abiding." *Op. cit.*, 106. To persons believing that all punishment must serve the aim of reshaping the offender's behavior, deterrence is sometimes

viewed as a thinly disguised notion of retribution; but as Packer and Frankel point out purely behavioral views of criminal punishment carry dangers of their own.

mum; the judge said that they would have been much greater had defendants been big suppliers; Russo was treated differently from appellants; the court heard and demonstrated familiarity with all mitigating facts and arguments. And, referring to evidence of appellants' former drug habits, the court indicated that it considered other aims beyond deterrence including, it says, rehabilitation. The rehabilitative value of prison is a matter of increasing doubt in many minds; but it is not unimaginable that incarceration might guard against repetition by separating appellants from the drug community and underscoring the seriousness of the offense. While, when addressing appellants, the court expressed confidence that they would not return to dealing, this could hardly be predicted with utter certainty. The opinion denying the Rule 35 motion stressed that the focus of the court's original remarks was narrowed to enhance their deterrent impact and should not be taken as a complete expression of reasons.

Finally, there is insufficient evidence of inflexibility in other drug cases to establish that the judge approaches each case with a closed mind. *Cf.* United States v. Charles, 460 F.2d 1093 (6th Cir. 1972). We might weigh such evidence, especially in a close case, but counsel's oral representations that jail sentences were imposed by this district judge in seven of eight drug cases are inadequate. The eighth case, of course, suggests that the judge is not utterly "mechanistic", and we cannot say without knowing more about each case that the jail sentences were proof of a policy of any particular type.

The judge's remarks in the present case, while reflecting a stern policy, fall short—we do not say by much—of the impermissible. Undoubtedly we are influenced by the court's manifestations of concern, patience and receptivity, indicating that his philosophy was tempered by a willingness to weigh individual facts. The case contrasts with others in which a sentencing judge's inflexibility

was underscored by reverse qualities. Appellants' quarrel, we think, is not really with any failure to exercise true discretion; it is with a sentencing philosophy which gives to general deterrence a prominence appellants dislike. Yet we are without authority to review questions of this sort.

Judge Frankel and others remind us that we are the only civilized country in the world that permits "one judge to exercise unbridled discretion, not subject to review, as to the extent and duration of punishment." *See* United States v. Bowser, 497 F.2d 1017 (4th Cir. 1974). Institution of review would change the locus of the problem; it is unlikely to eliminate it. Criminal punishment has been termed a form of social control "necessary but lamentable" because "it inflicts suffering in the name of goals whose achievement is a matter of chance." H. Packer, *supra* at 62. We know of no happy set of rules that could successfully guide the district court in its difficult task, and the Supreme Court, *see Dorszynski, supra,* has indicated that the formulation of such rules will be left to the legislature. The element of uncertainty is endemic to the present allocation of functions, and perhaps particularly and poignantly apparent in cases of this sort; on the other hand, both appellants were willing to deal illegally in cocaine, and with strangers, and at least one did so for monetary gain at a time when he denies being an addict. We cannot say that the sentences which were well within statutory limits were improper, nor should they have been entirely unexpected.

## II

 The court did not err in denying without hearing the motion for correction or reduction of sentence under F.R.Crim.P. 35. Such motions ordinarily do not require an opportunity for oral submission. *See* United States v. Garrick, 399 F.2d 685 (4th Cir. 1968). Appellants argue that the sentencing judge was "obviously" impelled to give the three year sentences because he be-

lieved, mistakenly they say, that cocaine was a hard narcotic and an addicting drug. They further argue that he was wrong in his belief that particular penalties or sentences deter others from committing offenses, especially drug offenses. The defense affidavits from experts in the field of drug research supported these propositions, especially the former, although they also seem to go beyond any issue open to the district court by attacking the wisdom of the drug laws *per se*. Cocaine was made a Schedule II controlled substance by Act of Congress. 21 U.S.C. § 812(c) II(a)(4). It may be removed but only by administrative procedures spelled out in the legislation. 21 U.S.C. § 811(a)(2). The criminalization of cocaine reflects a societal policy binding upon the courts; the district court was neither bound nor authorized to delve into the policies underlying the drug laws except as might be appropriate to exercise fairly its individual sentencing discretion.

■■■ Appellants were of course entitled to present, in mitigation of sentence, scientific views on the dangerousness of cocaine. *See* F.R.Crim.P. 32(a). Such submissions should have been made at the initial hearing; by the time of the Rule 35 motion the court had discretion to refuse data that could have been presented earlier.[3] Nonetheless, the court received, considered and responded to the motion and the affidavits; it was not required to do more. Indeed, the data in the affidavits was of a "legislative" variety which lent itself to written submission rather than the trial-type confrontation referred to in the Sixth Amendment. Many of the judgmental considerations affecting sentencing—ideas of value, policy and fairness"—infiltrate from "books, colleagues, perhaps people generally". *See* M. Frankel, *supra* at 73. A judge who might, the week

before, in another case or at a sentencing conference, have explored in depth data and opinions pertinent to one policy aspect of sentencing, need not go through the entire informational process again.

Less so would the judge, even at an initial hearing, be required to hear expert testimony on the philosophy of deterrence. Whatever appellants' views as to the "weight of modern scientific evidence", debate still rages on a proper hierarchy of sentencing values; while a judge should remain continually open to new ideas, he is not required to hold evidentiary hearings on such issues which are not quantifiably "scientific" but remain largely judgmental.

### III

■■ The district court complied with our rule, set forth in United States v. Picard, 464 F.2d 215 (1st Cir. 1972), to disclose the presentence report to appellants and their counsel at the time of sentencing. *See also* proposed F.R. Crim.P. 32(c)(3)(A), which makes such disclosure the general rule except in circumstances where serious harm to the defendant or others might result. We think the court should similarly have allowed new counsel to inspect the report for purposes of a Rule 35 motion. The reports were material to the motion. The court itself relied on information in the reports in responding to the motion. That we are able to find nothing specially derogatory in the reports, and nothing which appellants and new counsel did not apparently already know, merely underscores the desirability of disclosure. Non-disclosure appears simply to have created a further appellate issue. The only apparent error in the reports is a statement that Coveney was snorting cocaine at the rate of about one gram a day when he was arrested in November, 1972. Coveney was arrested in

---

3. Appellants argue that they should have been heard on the Rule 35 motion as part of their "right of allocution". Allocution is, however, the right to make a statement to the sentencing judge before he pronounces sentence, not a privilege to have the last word. *Cf.* United States v. Leavitt, 478 F. 2d 1101 (1st Cir. 1973). The right was fully afforded here.

October, not November. But the report goes on to repeat Coveney's assertion that he has not used drugs since his arrest. As there appears to be no information in the reports not already known, in substance, to appellants and counsel, and as the mistake in date seems trivial, we hold that the court's error in not disclosing was not prejudicial. Nonetheless, counsel may themselves inspect the reports at this time, and should they discover what they believe to be prejudicial information or misinformation therein, may bring the same to the district court's attention by further motion.

Affirmed.