**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Louis GUGLIELMI,
Defendant–Appellant.**

No. 90–6809.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1990.

Decided April 11, 1991.

Alan M. Dershowitz, Cambridge, Mass., argued (Harold J. Bender, Bender & Ma-

tus, Charlotte, N.C., Victoria B. Eiger, Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., New York City, on brief), for defendant-appellant.

Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.

MURNAGHAN, Circuit Judge:

For a third time, we are called upon to review the imposition of an extremely substantial sentence flowing from a conviction on multiple counts of obscenity crimes predating the advent of the federal sentencing guidelines.[1] Such review necessitates a most careful examination of the limitations the law places upon a federal appellate court's power to check the wide discretion accorded to federal district courts in matters of sentencing.

Appellant Louis Guglielmi was convicted, after a jury trial in the United States District Court for the Western District of North Carolina, of five counts of violating 18 U.S.C. § 1465 by aiding and abetting the transportation in interstate commerce of obscene films, five parallel counts of violating 18 U.S.C. § 1462 by using and causing to be used a common carrier for carriage of obscene films in interstate commerce, and one count of violating 18 U.S.C. § 371 by conspiring to commit the transportation counts. He was sentenced on October 14, 1985 to a total of 25 years' imprisonment by the district judge.[2]

Guglielmi appealed the original judgment, which was subsequently affirmed by this Court. *United States v. Guglielmi,* 819 F.2d 451 (4th Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988) (*"Guglielmi I"*). There, however, we expressed for the first time our con-

cerns regarding the sentence, troubled by the district court's order that the sentences run consecutively and by the fact that the FBI might, simply by ordering more films, have increased the sentence even further. Nevertheless, we held ourselves barred from conducting a proportionality review of the sentence by our earlier decision in *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

After petitions for rehearing *en banc* in this Court and for writ of *certiorari* in the Supreme Court were denied, Guglielmi filed a motion with the district court on May 9, 1988 to correct or reduce sentence under Federal Rule of Criminal Procedure 35(a) and (b). Without the benefit of a hearing and without awaiting the government's response, the district court, in a four-paragraph order, denied the motion. The order contained two very brief justifications for the denial: first, this court in *Guglielmi I* had already ruled that the sentence should not be disturbed on Eighth Amendment grounds and, second, contrary to the assertions of the movant, the court considered obscenity crimes to be very serious because their "victims," those who view the obscene films, might be compelled to commit sexual crimes.

On appeal from denial of the Rule 35 motion, we affirmed the Rule 35(a) portion of the district court's order as to the legality of the sentence, citing *Guglielmi I. United States v. Guglielmi,* No. 88–7656 Slip Op. at 4 (4th Cir., June 9, 1989) (unpublished opinion) [877 F.2d 60 (table) ] (*"Guglielmi II"*). But as to the Rule 35(b) portion, we found that the district court's order denying the motion indicated that the court had either deemed itself foreclosed from exercising its discretion or had allowed impermissible considerations to enter into the discretionary calculus.

---

**1.** In the absence of enhancement of sentence, the federal sentencing guidelines would have fixed incarceration at from eight to fourteen months. U.S.S.G. §§ 2G3.1, 2X1.1, 3D1.2(d), 3D1.3(b), 3D1.4(a).

**2.** The district court arrived at a sentence of 25 years by pairing the transportation counts and

fixing the five-year statutory maximum to each pair, fixing the five-year statutory maximum to the conspiracy count, and ordering all but the conspiracy and first paired transportation counts to run consecutively. In addition, fines were imposed totalling $35,000.

As to the latter concern over the permissibility *vel non* of those factors a court may consider in passing sentence, we viewed the district court's allusion to the theory that sexually explicit or sexually violent material may induce criminal behavior as either beyond the pale of rationales known to anti-obscenity statutes or an abjuration of discretion. Our inability to ascertain, from the district court's brief order, which of the two perspectives was intended was of no moment, because either interpretation warranted remand. *Guglielmi II*, No. 88–7656 Slip Op. at 8–10. Critical to that remand decision was the proper discharge of our duty to ensure that the district court's disposition of the Rule 35 motion bespoke a clear and unambiguous exercise of discretion. *See McCartney v. United States*, 382 F.2d 116, 118 (9th Cir. 1967) (remanding a Rule 35 disposition where sentencing court's denial of the motion leaves unclear whether court exercised discretion).

On reconsideration pursuant to *Guglielmi II*, the district court held a hearing on January 30, 1990, after granting three continuances at the request of counsel for Guglielmi. Both sides filed written arguments as well.

In addition to his brief, Guglielmi submitted documents attesting to his performance as a model prisoner, his good character, and his exemplary personal life. Renewed reference was made to the fact that Guglielmi's wife is wheelchair bound and that his son is in a Maryland institution for the criminally insane. Guglielmi also reemphasized that he was a first offender and was out of the pornography business entirely, thus posing no threat of recidivism.

The government argued against reduction of sentence on the grounds that the instant offenses involved extreme forms of obscenity, including particularly degrading and repulsive portrayals of bestiality; that the evidence indicated Guglielmi was engaged in a business of some significant scale involving films similar to the eight charged in the indictment; that there was evidence showing calculated knowledge by Guglielmi that he was engaged in illegal conduct; that particularly degrading, obscene materials such as those in the instant case have been linked to various harms to society and individuals (citing *Attorney General's Commission on Pornography, U.S. Department of Justice, Final Report* (1986)); that a lengthy sentence was a proper deterrent; and that Guglielmi had not demonstrated remorse or acceptance of responsibility and had failed to make any significant payment on his $35,000 fine despite apparent assets of more than $1.1 million.

After taking the arguments under advisement for a month and a half, the district court again denied Guglielmi's motion in a thirteen-page order filed on March 19, 1990. 731 F.Supp. 1273. Of those thirteen pages, two clarified the district court's interpretation of our ruling in *Guglielmi I* that the sentence "should not be disturbed," pointing out that its reliance on that language pertained only to the court's refusal to reconsider the asserted illegality of Guglielmi's sentence under Rule 35(a) and was not to be read as having relieved the court of exercising its discretion. Six pages were devoted to drawing a distinction between a) on the one hand, what the district court regarded as our reading of the district court's original order that trafficking in obscene materials *foments violence* and b) on the other, its own reading that such materials *can* bring about such a result. Reference was made to the *Attorney General's Commission on Pornography Final Report* 1986 linking the degradation depicted in certain obscene films to "the level of sexual violence ... in the population so exposed," juxtaposed with the graphic description of the films contained in *Guglielmi I* with the stated hope that we would "evaluate[ ] [the order] in the light of those facts." Three pages reviewed evidence adduced at trial that Guglielmi was a "large-scale" dealer in pornographic materials, and two pages took issue with counsel for Guglielmi's contention that he had been treated unfairly when his request for a continuance on January 30, 1990 was denied. In only two sentences did the district court appear to have weighed its own view of the gravity of the

offenses against factors relating to the person charged, when it stated, "The Court notes that defense counsel ... contends that Defendant has a 'superb institutional record,' and the Court does not dispute that statement based on the information furnished. However, that does not detract from the Court's principal reason for incarceration, and that is deterrence."

Guglielmi timely filed a notice of appeal, urging for a third time that we conduct a proportionality review of the sentence pursuant to the Rule 35(a) portion of his motion and for a second time that we review the denial of the Rule 35(b) portion of his motion for an abuse of discretion.

## I. Proportionality Review

We are precluded from conducting a proportionality review of the sentence under the Eighth Amendment for the simple reason that the issue has not properly been before us since *Guglielmi I. See Guglielmi II,* No. 88–7656 Slip Op. at n. 1. Counsel for Guglielmi appears to have unwarranted faith in the oft-repeated truism that water will wear away stone.

Undeterred, he has adjusted the argument to contend at oral argument that, without the availability of proportionality review, our scrutiny under an abuse of discretion standard should be more sharply focused.

## II. Abuse of Discretion

We turn our attention to Guglielmi's abuse of discretion arguments. Guglielmi puts forward two arguments, mirroring the deficiencies we noted in *Guglielmi II,* as to why the district court abused its discretion in denying his Rule 35(b) motion. He first has contended that the district court based the sentence upon invalid, inappropriate, and illogical criteria—a sentence never contemplated or authorized by Congress. Second, Guglielmi has urged that the district court ignored our mandate in *Guglielmi II* that, on remand, the district court consider the Rule 35 motion by balancing the nature of the crime against such factors as Guglielmi's previous criminal record, any extenuating personal circumstances, and any interim factors such as Guglielmi's performance record in prison. His contention in effect has been that there has been no adequate exercise of discretion.

Rather than addressing the arguments *seriatim,* we conduct our analysis by conflating the issues and then determining whether the district court, by continuing to focus upon factors of questionable relevance and utility while giving minor attention to the interim factors we had addressed in *Guglielmi II,* exercised its discretion as mandated by Rule 35 in any discernable or meaningful way.

Rule 35(b), as applicable to offenses committed prior to Nov. 1, 1987, generally grants the sentencing court discretion to reduce a sentence, and specifically permits changing a sentence of incarceration to one of probation.[3]

█ It is well-settled in this circuit that "[a] motion for reduction of sentence under Rule 35 is addressed to the sound discretion of the district court, and it follows that the district court's disposition of the motion is not reviewable on appeal except for a clear abuse of discretion." *United States v. Stumpf,* 476 F.2d 945, 946 (4th Cir.1973); *see also United States v. Ames,* 743 F.2d 46, 48 (1st Cir.1984), *cert. denied,* 469 U.S.

---

**3.** The Rule provided,

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Pub.L. No. 98–473, Title II, § 215(b), 98 Stat. 2015 (1985) amended Rule 35(b) to allow a reduction of sentence only for changed circumstances and only on the government's motion. The amendment applied only to offenses committed after November 1, 1987 and is thus not applicable here.

1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985) ("The function of Rule 35 is to allow the district court to decide if, on further reflection, the sentence seems unduly harsh."); Notes on the Advisory Committee on Fed. R.Crim.P. 35, ("[T]he underlying objective of Rule 35 ... is to 'give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim.'") (*citing United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir.1968) (respecting 1983 amendments to Rule 35(b)).

Despite the broad discretion so afforded, we have not hesitated to establish boundaries beyond which a district court may not go in imposing sentence. For example, in *Stevens v. Warden, Maryland Penitentiary*, 382 F.2d 429 (4th Cir.1967), in which the defendant was sentenced to 20 years' imprisonment for robbing a store of $47, we wrote,

> The whole concept of modern sentencing procedure calls for the exercise by the sentencing judge of a high order of discretion to fit the sentence to the crime and to the defendant. "Usual" and routine imposition of the statutory maximum sentence upon first offenders and others who stand substantially in that position without regard being had to the nature and character of the offense and to the defendant's record and personality seems an abrogation of responsibility and negation of the discretion which the law vests in the trial judge.

*Id.* at 433. *See also United States v. Rosenthal*, 673 F.2d 722 (4th Cir.1982) (intercession on appeal will be exercised if defendant demonstrates that sentencing court mechanically imposed stiff penalties in all instances of a particular nature without consideration of the individual defendants involved); *United States v. Foss*, 501 F.2d 522 (1st Cir.1974) (same).

In *United States v. Lewis*, 392 F.2d 440 (4th Cir.1968), the district court, at sentencing, mistakenly believed that 18 U.S.C. § 4208(a)(2), providing for revocation of probation as a consequence of violating its conditions, required the judge to impose the maximum sentence for the crime of interstate transportation of a motor vehicle. In considering Lewis' Rule 35 motion, we ruled that "[t]he judge's misconception drove him to act contrary to his considered judgment. He felt bereft of all discretion. Of course, the legislature may deprive a court of a freedom of action previously possessed, but courts cannot so bind themselves. A defendant is entitled to the *unfettered* and *unset* deliberation of the judge." *Id.* at 443 (emphasis added).

We also have had occasion to vacate sentences for statutory or constitutional considerations. *See United States v. Maples*, 501 F.2d 985, 986–87 (4th Cir.1974) (sentencing tainted because female codefendant given more lenient sentence simply on the basis of her sex); *United States v. Eberhardt*, 417 F.2d 1009, 1015 (1969) (remanded where sentence was possibly increased because of crimes committed between indictment and conviction). The teaching of the authorities defining abuses of discretion in the disposition of Rule 35 motions led us to conclude in *Guglielmi II* that such "disposition must reflect a genuine exercise of discretion, a discretion not contoured by incorrect or inapplicable principles." No. 88–7656 Slip Op. at 7 [877 F.2d 60 (table)].

Mindful of our duty to ensure such an exercise of discretion, we find that upon a thorough review of the district court's opinion and order of March 17, 1990, we can only conclude that the district court failed to exercise its discretion discernably or meaningfully. It has not sufficiently balanced, or demonstrated a balancing of, the nature and character of the offense against Guglielmi's record and his personal character as mandated by Rule 35 and the law of this circuit.

As recited above, the district court in its opinion went to great lengths to emphasize the seriousness of Guglielmi's crimes, the scale of his operation, and, to a lesser extent, the need to deter such crimes in the future. It is not the substance of such justifications that troubles us nearly as much as does the district court's unwaver-

ing focus upon them at the expense of other considerations. We recognized in *Guglielmi I* that "it is entirely appropriate for a judge, when imposing a sentence, to comment upon the nature and gravity of the offense." 819 F.2d at 456. We further accept that in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court has declared that a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id.* at 446, 92 S.Ct. at 591. And we have little doubt that a sentencing court is free to consider the impact a defendant's crimes have had on a community and to vindicate that community's interest in justice. *See United States v. Bakker*, 925 F.2d 728, 740 (4th Cir.1991). But here, in reviewing the denial of a Rule 35 motion, such statements weigh upon only one side of the discretionary scale. Thus, their mere reemphasis, no matter how extensive the analysis or how forceful and graphic the language, falls short of demonstrating a meaningful exercise of discretion of the kind we envisioned in *Guglielmi II.*

We find the comments of the First Circuit in reviewing a particularly harsh sentence imposed by Judge Frankel to be particularly instructive:

> The judge's remarks in the present case, while reflecting a stern policy, fall short—we do not say by much—of the impermissible. Undoubtedly, we are influenced by the court's manifestations of concern, patience and receptivity, indicating that his philosophy was tempered by a willingness to weigh individual facts.

*Foss*, 501 F.2d at 529. By contrast from that case, we have before us a single statement in a thirteen-page opinion which purports to conduct a careful balancing of an individualized sentence against goals of deterrence. Such a passing reference to the substantial and legitimate human factors

placed squarely before the district court amounts to no more than lip service. The detailing of the punitive goals of deterrence cannot act as a substitute for, or rule inappropriate, consideration of facts pertinent to discretionary evaluation on an individualized basis. As the *Foss* court pointed out,

> The court's duty to "individualize" the sentence simply means that, whatever the judge's thoughts as to the deterrent value of the jail sentence, he must in every case reexamine and measure that view against the relevant facts and other important goals such as the offender's rehabilitation.

501 F.2d at 528.

We have, in addition, the court's flat statement that a hearing on the original motion or reference to the record was unnecessary because "this case involved such egregious obscene film that the Court *will never forget* the case nor the expression on the faces of the jury which had to view this pornography ...". (Emphasis added.) That statement, in our view, clearly cuts against a sentencing "philosophy tempered by a willingness to weigh individual facts," and, absent indications to the contrary, we are left inevitably to conclude that the district court was influenced to impose sentence upon the films and not the defendant. Such a sentence is inconsistent with the law of this circuit. *United States v. Ingram*, 530 F.2d 602, 603 (4th Cir.1976) ("[a] rigid sentencing policy based solely on the crime with which the defendant is charged 'is under no reasonable conception an exercise of judicial discretion' ").[4]

■ As we stated in *Guglielmi II*, "Rule [35] makes clear ... that a discretionary appraisal of [a convict's] case in favor of reduction is the movant's due." No. 88–7656 Slip Op. at 8. We are convinced that, in the case before us, Guglielmi was denied the type of discretionary appraisal called for by the Rule. We find the district

---

**4.** While cases such as *Ingram, Stevens,* and *Rosenthal* concerned the "routine" or "mechanical" imposition of severe sentences, it was the failure of the sentencing judge properly to exercise its discretion by individualizing the sentence, and not the particular indices or manifestations of that failure, that justified remand. Here, such failure is equally apparent and thus equally deserving of remand.

court's order of March 17, 1990 to be bereft of meaningful indices that the court balanced the nature of the crime against the personal characteristics and circumstances of Guglielmi. That conclusion is further buttressed by the district court's insistence upon devoting almost half of its opinion to a justification for initial imposition of the sentence which we have from the beginning considered to have little, if any, relevance to the issue with which the district court was, and now we are, confronted. We thus conclude, with genuine regret, given the drawn-out manner of the case and the painstaking efforts of the district judge, that the case must once again be remanded in order to afford Guglielmi's Rule 35(b) motion the kind of discretionary consideration consistent with our analysis here. The only remaining question, then, is whether remand to the same district judge would result in a permissible exercise of discretion. We believe that it would not, that to provide the requisite exercise of discretion would be to compel from the district judge a performance that would be unreasonable, indeed unfair, to expect. The procedural history of the instant case has left us convinced that, absent some affirmative act on our part, we shall be locked in an endless cycle of remands and renewed appeals that will move us no closer to discerning a meaningful exercise of the sentencing judge's discretion, but will rather serve only to effect adversely the relationship of this circuit and its district courts.

We wish it to be understood that this is not a case requiring remand to a different judge because of bias on the part of the sentencing judge. *See, e.g., United States v. Bakker*, 925 F.2d at 740 (religious bias); *United States v. Diamond*, 561 F.2d 557 (4th Cir.1977) (regional bias). Nevertheless, a growing number of circuits,[5] facing circumstances quite similar to those present here, have adopted the three-part test set out by the Second Circuit in *United States v. Robin*, 553 F.2d 8 (2d Cir.1977), which recognized that "in a few instances there may be unusual circumstances where 'both for the judge's sake and the appearance of justice' an assignment to a different judge 'is salutary and in the public interest, especially as it minimizes even a suspicion of partiality.'" *Id.* at 9–10 (citations omitted). In determining the propriety of remand to a different judge, the *Robin* court considered,

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 10. For reasons previously expressed, we need not linger long over the question of whether each of these three prongs has been satisfied.

As to the first prong, the district judge's continued and substantial reliance on a theory of a causal nexus between sexually explicit materials and sexually violent behavior in its viewers and his comment that he "will never forget the case nor the expression on the faces of the jury which had to view this pornography" as obviating the need for a hearing or reference to Guglielmi's file, strongly suggest that such considerations will remain in the forefront of the judge's thinking were the case to be remanded to him yet again. As the *Robin* court aptly stated,

In the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his attention, reassignment to another judge may be advisable in order to avoid "an exercise in futility [in which] the Court is merely

---

5. *See e.g., United States v. White*, 846 F.2d 678, 696 (11th Cir.1988); *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 781 (9th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); *United States v. Garcia*, 694 F.2d 294, 296 (1st Cir.1982); *United States v. Long*, 656 F.2d 1162, 1166 n. 7 (5th Cir. Unit A 1981); *Bercheny v. Johnson*, 633 F.2d 473, 476–77 (6th Cir.1980).

marching up the hill only to march right down again."

*Id.* at 11 (citations omitted). In our view, the incarnation of the Sisyphus legend need not be prolonged.

As to the second and third prongs, our stated purpose throughout has been to ensure, as is our proper function, the exercise of legitimate and meaningful discretion by a district court due every Rule 35(b) movant. *Guglielmi II*, No. 88–7656 Slip Op. at 8. Here, that purpose can only be carried out fully by remanding the case to a different judge, a purpose which we feel to be of sufficient gravity to outweigh any waste or duplication which may result from so doing.

Finally, we would emphasize that our opinion today should not be read to "imply any personal criticism of the trial or sentencing judge." *Robin,* 553 F.2d at 10. To the contrary, our decision is grounded in our belief, informed by a careful examination of the record, that the district court below "cannot reasonably be expected to erase the earlier impressions from his … mind or may tend to lean over backwards or overreact in an effort to be fair and impartial. A new fact-finder would not labor under such a handicap." *Id.* For all of the foregoing reasons, the judgment of the district court is thus

VACATED AND REMANDED.

WILKINSON, Circuit Judge, concurring in the judgment:

I too would remand this case for resentencing but for different reasons than those expressed by the majority.

### I.

My reservations about the majority's reasoning are twofold. First, although ostensibly reviewing the district court's exercise of discretion under Fed.R.Crim.P. 35, the majority conducts what appears to be akin to proportionality review. The majority claims that the district court did not exercise its sentencing discretion in any "discernable or meaningful way," At 1004, and that it weighed "only one side of the discre-

tionary scale." *Id.* at 1006. In truth, the district court did exercise its discretion and found the nature of the unlawful conduct such as to outweigh any factors adduced in mitigation of it. The decision to overturn the exercise of such discretion propels federal appellate courts on the basis of little more than personal preference into what is indisputably a trial court function. In its apparent belief that the sentence here is disproportionately severe relative to the offense committed, the appellate court has effectively supplanted the district court's discretion with its own.

Second, the majority emphasizes Guglielmi's prison record, personal character, and individual family circumstances and criticizes the district court for failing to accord these factors significant weight. I question whether such factors can provide a proper ground for finding an abuse of discretion, particularly in light of the Sentencing Guidelines which explicitly de-emphasize such considerations in favor of offense-based sentencing. *See* 28 U.S.C. §§ 991(b)(1)(B), 994(e). Although this case involves pre-Guidelines sentencing, the Guidelines surely cannot be irrelevant to our inquiry. The district court's approach with respect to personal factors is similar to that adopted by Congress and I find it difficult to reverse the district court for abuse of discretion when its emphasis upon the nature of the offense rather than upon the characteristics of the defendant has since become the approved approach to sentencing.

### II.

Nevertheless, I cannot accept the sentence in this case. The severity of a sentence ought not to be purely idiosyncratic but should be pursuant to a legislative mandate. *See United States v. Smith,* 686 F.2d 234, 239 (5th Cir.1982) ("It is for Congress to say what shall be a crime and how that crime shall be punished; it is not the prerogative of this Court."); *United States v. Holmes,* 838 F.2d 1175, 1178 (11th Cir. 1988). Capital punishment, the most severe penalty society can visit upon a wrongdoer, has been imposed pursuant to the clear mandate of many legislatures and

generally by the community speaking through a jury. Similarly, the Guidelines may appear strict at times, but they are authorized by Congress and set broad parameters for the exercise of discretion. One of the reasons the Guidelines were promulgated was to insure that punishment would actually reflect society's sentiments and not a personally idiosyncratic view; the framers "sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A, § 3, p.s. (Nov. 1990) [hereinafter U.S.S.G.].

Two reasons in combination lead to the conclusion that the sentence here is indeed idiosyncratic and beyond the scope of any legislative mandate. First, the length of the sentence is the consequence of an artificial construct. The assigned twenty-five year imprisonment was based on five consecutive shipments of films that led to five consecutive five-year sentences. The number of shipments, and thus the magnitude of the possible sentence, could easily be manipulated. This aspect is not in itself fatal because any undercover operation necessarily entails some discretion in the frequency and the amount of undercover purchases. The difficulty lies, however, in the apparent lack of any limiting principle. Legislative will can be distorted if a sentence is simply run up by a continuing series of orders. Indeed, the Sentencing Commission was aware of that possibility and designed the Guidelines "with an eye toward eliminating unfair treatment that might flow from count manipulation." U.S.S.G. Ch. 1, Pt. A, § 4(a), p.s. "For example, the guidelines treat a three-count indictment, each count of which charges sale of 100 grams of heroin or theft of $10,000, the same as a single-count indictment charging sale of 300 grams of heroin or theft of $30,000." *Id.; see id.* § 3D1.2(b), (d). The artificial nature of Guglielmi's sentence, while not solely determinative, surely must be one factor in the inquiry.

The second indication that the sentence here is idiosyncratic is the Guidelines' computation of punishment for Guglielmi's conduct. The Guidelines mandate a sentence of eight to fourteen months for someone with no criminal record, enhanced potentially to eighteen to twenty-four months if the obscene films also portrayed "sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G3.1(b)(2). The sentence Guglielmi received was twenty-five years. We cannot presume that Guglielmi will receive parole after serving eight years and four months or at any subsequent time; such an assumption would be beyond our province and would constitute mere speculation on our part. The Guidelines, of course, are not binding on the district court in this case. Nevertheless, they remain the best indication of society's views as expressed through legislative authorization, and they are quite at odds with what has happened here. The district court's sentence is, in fact, the sort of abuse that led to the promulgation of the Guidelines in the first place.

Setting aside a sentence imposed by a conscientious district judge should be a rare thing. But the wrong done an individual by purely idiosyncratic punishment may be so apparent as to constitute one of those rare instances where recourse may be had to an appellate court. Because the sentence here strayed far from any legislative sanction, I concur in the judgment.